# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. CR-19-137-G |
| ) | |
| COLTEN RAY ROGERS, ) | |
| ) | |
| Defendant. ) | |

## THE UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR UPWARD VARIANCE

The United States of America, by Timothy J. Downing, United States Attorney for the Western District of Oklahoma, through Wilson D. McGarry, Assistant United States Attorney, submits the following Motion for Upward Variance. Given the violent nature of Mr. Roger's behavior, his disregard for the law, pattern of lies, falsification of documents submitted to the United States Probation Office, and his history of domestic violence, the United States moves for an upward variance. Both combined and in isolation, these factors warrant a sentence above the advisory Guidelines range of 37 to 46 months, as calculated by the United States Probation Office ("USPO").

## I. BACKGROUND

On April 3, 2019, the United States filed a Criminal Complaint charging Colten Rogers with the illegal possession of a machine gun, in violation of 18 U.S.C. § 922(o). Doc. 1. According to the Affidavit in support of the Criminal Complaint, over the course of several months, Mr. Rogers negotiated the sale of a Glock conversion switch to an

undercover special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *Id.* at 3. A Glock conversion switch is a device that can be installed on a Glock handgun that converts it from a semi-automatic weapon to an automatic weapon or machine gun for purposes of 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b). *Id.* Mr. Rogers was arrested on the Complaint on May 30, 2019. Presentence Investigation Report ("PSR"), at ¶ 12. After his arraignment, Mr. Rogers was released on a $5,000.00 unsecured bond. *Id.*

Shortly thereafter, on May 7, 2019, a federal grand jury sitting in the Western District of Oklahoma returned a one-count Indictment charging Mr. Rogers with the illegal possession of a machine gun. PSR, at ¶ 1. This triggered a series of counsel being appointed or hired to represent Mr. Rogers and resulted in Mr. Rogers backing out of a plea on September 27, 2019. Doc. 31; Doc. 47, *Motion for Breach of Plea Agreement*.

On November 6, 2019, Mr. Rogers was indicted in a two-count Superseding Indictment. PSR, at ¶ 3. The Superseding Indictment charged Mr. Rogers with illegal possession of a machine gun in violation of 18 U.S.C. § 922(o) and possessing a firearms silencers in violation of 26 U.S.C. § 5871. *Id.*, at ¶ 4. On February 12, 2020, Mr. Rogers pled guilty to count one of the Superseding Indictment pursuant to a plea agreement with the United States. *Id.*, at ¶ 7.

On April 27, 2020, the USPO filed a petition to revoke Mr. Rogers' bond release after multiple violations of his conditions of his release came to light. PSR, at ¶ 19. A violation memorandum was filed with the Court on April 29, 2020, outlining the alleged

violations of Mr. Rogers' release conditions. Doc. 57; PSR, at 13. According to the USPO, Mr. Rogers' wife did not feel safe around Mr. Rogers (PSR, at ¶ 13), Mr. Rogers failed to report his employment termination (PSR, at ¶ 14), Mr. Rogers traveled outside of the district without authorization (PSR, at ¶ 14), he lied to the USPO about his employment multiple times, falsified a paystub, and had a domestic violence incident which involved the police (PSR, at ¶ 17). Mr. Rogers admitted to the violations. Doc. 65. Based on these violations, Mr. Rogers' bond was revoked and he was detained pending his sentencing. PSR, at 21.

In this case, an upward variance is warranted in light of the factors set forth in 18 U.S.C. § 3553(a). In particular, Mr. Rogers' conduct of indiscriminately selling machine guns, his repeatedly violent conduct, and disrespect for the law warrants an upward variance.

## II. THE COURT'S AUTHORITY TO UPWARDLY VARY

The Court may reach a sentence above the advisory Guidelines range calculated by the U.S. Probation Office by a variance. Where there are "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," this Court may, in its discretion, sentence outside the advisory range. 18 U.S.C. § 3553(b)(1). The Sentencing Guidelines specifically discuss the need for variance where the criminal history category "substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that

the defendant will commit other crimes." United States Sentencing Guidelines, § 4A1.3(a). Factors other than those listed in § 4A1.3(a) can be considered by this Court when making a determination as to whether Defendant's criminal history category is fully informative of the issues in the Sentencing Guidelines. USSG §§ 1B1.1, comment n.2; 4A1.3(a)(2).

Ultimately, it is this Court's task to find a "substantively reasonable" sentence. "A substantively reasonable sentence ultimately reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *United States v. Cage*, 451 F.3d 585, 594 (10th Cir. 2006). This broad authority is delineated in 18 U.S.C. § 3661, which provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.[1]

The amount of deviation is reviewed by appellate courts on a standard of reasonableness in light of the facts of the case. *United States v. Mateo*, 471 F.3d 1162, 1169 (10th Cir. 2006). The broad scope of facts that may be considered includes the ability to consider prior arrests that did not result in convictions, as they suggest a pattern of unlawful

---

[1] Facts that a court relies upon to vary or upwardly depart, like sentencing enhancements, need only be proven by a preponderance of the evidence. *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008). The phrase "no limitation," 18 U.S.C. § 3661, includes information that would have otherwise been inadmissible at trial so long as it has "some minimal indicia of reliability." *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995) (hearsay statements allowed); Fed. R. Evid. 1101(d)(3); USSG § 6A1.3(a). Documentary evidence such as an officer's affidavit and police reports have been found sufficient to prove facts by a preponderance of the evidence. *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008).

behavior, even in the absence of a conviction. *Id.* at 1167. It also includes uncharged, but related conduct. *United States v. Mumma*, 509 F.3d 1239, 1245 (10th Cir. 2007); *Cook*, 550 F.3d at 1294. When considering all of these factors, the United States submits that a sentence within the advisory Guidelines range—much less time served, as suggested by Mr. Rogers—is inadequate.

### III. FACTORS JUSTIFYING AN UPWARD VARIANCE OR DEPARTURE

#### A. Nature and Circumstances of the Offense/Seriousness of the Offense

Under 18 U.S.C. § 3553(a), when imposing a sentencing, the Court must consider both the "nature and circumstances of the offense" and the "seriousness of the offense." In this case, these two considerations warrant a sentence well-above the advisory Guidelines range, as calculated.

Mr. Rogers' conduct is extremely serious. Essentially, Mr. Rogers was indiscriminately selling Glock switches and unregistered firearms silencers to anyone who would pay. PSR, at 23. Based on the PSR, it is unknown exactly how many Mr. Rogers sold, but it is clear he sold a lot of machine guns and silencers. It merely took a Confidential Informant ("CI") approaching Mr. Rogers at a gun range to purchase a Glock switch and a silencer. *Id.*, at 23-29. During the interactions between the CI and Mr. Rogers, Mr. Rogers established that he had sold many machine guns, at least ten – two to a doctor and a statement that he sold another eight Glock switches. PSR, at 24. For a Glock switch and silencer he charged the CI $700.00 (PSR, at ¶ 25), but also he told the CI that he had sold a doctor $20,000 worth of "stuff." The Court can easily infer that Mr. Rogers has put a

large quantity of extremely dangerous weapons into our society. Mr. Rogers also instructed an undercover agent to lie on a form if he wanted to register the silencer made by Mr. Rogers. PSR, at 29.

While nobody was directly hurt by Mr. Rogers' conduct, we simply do not know how many machine guns he sold and whose hands those weapons will end up in. Moreover, machine guns and silencers have no sporting purpose. If in the wrong hands, such as someone violent like Mr. Rogers, the consequences from these weapons could be dire.

### B. The History and Characteristics of Mr. Rogers

This Court must consider the "history and characteristics of the defendant" when fashioning his sentence. 18 U.S.C. § 3553(a)(1). As with the seriousness of the offense, this consideration also supports a sentence above the advisory Guidelines range. Even though Mr. Rogers is 33 years old, his violent behavior stretches back to at least 2005 and continues until his detention in this case.

#### 1. 2005 Domestic Battery

On March 13, 2005, Mr. Rogers was arrested for 3rd degree domestic battery. PSR, at ¶ 63.

#### 2. 2008 Domestic Battery

On June 18, 2008, Mr. Rogers was convicted of Domestic Battery in Arkansas. PSR, at ¶ 57. He was sentenced to one year probation. *Id.*

### 3. 2010 Protection Order

On December 6, 2010, Mr. Rogers had an order of protection entered against him. Exhibit 1, *Arkansas Order of Protection (DR-2010-886)*, at 1-7. This order does not expire until December 2, 2020. Ex. 1, at 1 and 19. The protective order provided Mr. Rogers with notice that it is a federal crime for him to possess a firearm while subject to the order. *Id.* at 5. Thus, Mr. Rogers' possession in this case was in violation of that protective order.

### 4. 2015 Domestic Assault and Battery

On January 14, 2015, Mr. Rogers was arrested on domestic violence. As noted in the PSR, the officer at the scene observed the victim with a red and slightly swollen face. PSR, at ¶ 71. The victim indicated that Mr. Rogers punched her in the face and numerous times in the stomach and side after a dispute about laundry. *Id.*

### 5. 2020 Domestic Violence

On April 27, 2020, Mr. Rogers' wife filed a Petition for Protective Order in Oklahoma County District Court. Exhibit 2, *Rogers Protective Order (PO-2020-781)*. The petition alleges that Mr. Rogers choked his wife and hit her in the eye. *Id.* at 4. Mr. Rogers' wife also alleged that during their three marriage she experience "multiple episodes of physical, mental, [and] emotional abuse." *Id.* The petition was filed the same day as an incident of domestic violence between Mr. Rogers and his wife. According to an Oklahoma City Police Report, were called to a "civil standby." Exhibit 3, *4/27/20 OCPD Report*. When officers arrived, they attempted to keep the peace between Mr. Rogers and his wife. While officers were present, Mr. Rogers picked up a metal pipe and

hit the front bumper of his wife's Hyundai Sonata. *Id.* at 7. Then Mr. Rogers proceeded to use a wooden ore to hit and break the front window of the car. *Id.* The incident was caught on video which the United States anticipates playing at sentencing. Likewise, the metal pipe and damage done to the car were documented with photographs. Exhibit 4, *Pictures of Damage*.

A review of Mr. Rogers' prior domestic violence shows that he has established a violent and dangerous pattern of behavior that not only continues to become more violent, but also warrants a sentence above the advisory Guidelines range. Mr. Rogers has engaged in continuous violent domestic acts since the age of 18 and that mixed deadly machineguns and silencers can only result in tragedy.

### C. Promote Respect for the Law and Need to Protect the Public

Perhaps the single greatest reason for this Court to give a sentence above the advisory Guidelines range, however, is that Mr. Rogers' sentence must "protect the public from further crimes of the defendant" and "promote respect for the law." See 18 U.S.C. § 3553(a)(2). As detailed above, Mr. Rogers' past demonstrates a pattern of escalating violent behavior. In particular, the violent behavior exhibited by Mr. Rogers is typically targeted on women with whom he has been in a relationship and, collaterally, the children and third parties who might be associating with the victim. He has graduated from third degree abuse to threatening violence on others, destroying property in the presence of law enforcement and strangulation of his wife.

Additionally, Mr. Rogers has shown the Court that he cannot be taken at his word. Mr. Rogers repeatedly lied directly to his probation officer regarding his employment. Doc. 57. He violated numerous conditions of release which were only brought to light because of his domestic violence. With regard to his lies to the USPO, Mr. Rogers, most egregiously, fabricated a paystub and submitted it to the USPO when in fact he had been previously terminated. *Id.* This is likely a criminal offense in and of itself.

Ultimately, his behavior shows disrespect for the law, property, and family. An above-guidelines sentence may adequately promote respect for the law and more importantly protect the public, which includes his wife and children, from Mr. Rogers' violent behavior.

Mr. Rogers seeks leniency in his sentence and blames his recent domestic violence on financial pressures. Doc. 71, at 2. However, this flies in the face of Mr. Rogers' documented history of domestic violence. Moreover, while Mr. Rogers may claim that he modified the Glock as an enthusiast and not for violent criminal reasons, he still sold many modified Glock machine guns to unknown persons. Moreover, with his history of violence, at any moment he could have turned a machinegun on his family or others around him. A sentence of probation will not provide just punishment for Mr. Rogers' conduct nor will it instill adequate respect for the law that Mr. Rogers clearly lacks. Until Mr. Rogers accepts and addresses his issues of anger, violence, and lying, a sentence above the advisory Guidelines range is necessary to ensure the protection of the public.

### D. Provide Just Punishment for the Offense

The United States contends that a just punishment in this instance is one that takes into consideration all factors, including the seriousness of the crime.

### E. Afford Adequate Deterrence to Criminal Conduct

Despite Mr. Rogers' serious violent criminal history, he has served no time of imprisonment. In this case, Mr. Rogers' requests leniency, however, the prior leniency that Mr. Rogers' was afforded has not adequately deterred his violent behavior and his willingness obstruct justice by lying to law enforcement.

### F. Provide defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner

The United States anticipates that Mr. Rogers will have opportunities while in prison to address his emotional and mental health issues. The government agrees with all the conditions of supervised release recommended by the USPO. PSR at ¶¶ 115-117. This factor does not strongly favor either a lighter or longer sentence.

### G. Sentencing Guidelines

According to the U.S. Probation Officer's calculations in the PSR, Mr. Rogers' total offense level of 21 and criminal history category of I results in a Sentencing Guideline range of 37 to 46 months. PSR at ¶ 109.

**H.     Any pertinent policy statement under U.S.S.G. § 4A1.3(b)**

It does not appear that Mr. Rogers' criminal history category substantially over-represents the seriousness of his criminal history or the likelihood that Mr. Rogers will commit other crimes.

**I.     The need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

The United States submits that there is no information indicating this offense conduct presents issues that are unique or distinguishable from cases involving other defendants with similar records found guilty of similar conduct.

**J.     The need to provide restitution to the victim**

Restitution is not at issue at this time.

## **CONCLUSION**

The advisory Guidelines range is insufficient to address the purposes of sentencing under 18 U.S.C. 3553(a). Consequently, the United States moves for the Court to vary upwards and sentence Mr. Rogers to a sentence which is justified by the severity of the offense.

Respectfully submitted,

TIMOTHY J. DOWNING
United States Attorney

/s/ *Wilson D. McGarry*
WILSON D. McGARRY
Assistant U.S. Attorney
Oklahoma Bar No. 31146

210 Park Avenue, Suite 400
Oklahoma City, OK 73102
Telephone: 405-553-8700
Telecopier: 405-553-8885
e-mail: wilson.mcgarry@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

J. Patrick Quillian, Attorney for Defendant Colten Rogers.


/s/ *Wilson D. McGarry*
WILSON D. McGARRY